# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RONALD J. MAX,

        Plaintiff,

  v.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

        Defendant.

Civil Action No. 07-01533
DAR

## MEMORANDUM OPINION

Plaintiff Ronald J. Max commenced this action against the Commissioner of the Social

Security Administration, pursuant to 42 U.S.C. § 405(g), seeking review of the Social Security

Administration's denial of his claim for disability insurance benefits.  *See* Complaint (Document

No. 1).  The parties consented to proceed before a United States Magistrate Judge for all

purposes, and the matter was assigned to the undersigned.  *See* Notice, Consent, and Reference of

a Civil Action to a Magistrate Judge (Document No. 20).  Pending for determination are

Plaintiff's Motion for Judgment of Reversal (Document No. 9) and Defendant's Motion for

Judgment of Affirmance (Document No. 15).  Upon consideration of the motions, the

memoranda in support thereof and opposition thereto, the administrative record, and the entire

record herein, the undersigned will grant Defendant's motion, and deny Plaintiff's motion.

## BACKGROUND

Plaintiff Ronald J. Max, who was born in 1943, applied for disability insurance benefits

in January, 2003.  Administrative Record ("AR") (Document No. 6) at 40, 61, 66-68, 310.  At

that time, he reported that he became disabled on January 1, 2000 due to psoriatic arthritis,

Parkinson's disease, tendinitis, and depression.[1]  *Id*.  16, 66,68-71.

    Plaintiff's claims were initially denied by the agency, and also upon reconsideration.

Memorandum in Support of Plaintiff's Motion for Judgment of Reversal ("Plaintiff's

Memorandum") at 1.

    Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").

*Id*.  The ALJ conducted a hearing on August 2, 2006 at which he heard testimony from Plaintiff,

who was represented by counsel; Nancy France, a witness for the Plaintiff; Dr. David W.

Williams, "an impartial medical expert[,]" and Eileen M. Lincicome, "an impartial vocational

expert."  *id*.  at 16.  The ALJ issued his findings on August 2, 2006, and determined that Plaintiff

was not entitled to disability insurance benefits "because [Plaintiff] has not been under a

disability within the meaning of the Social Security Act through the date last insured of

December 31, 2000."  *Id*.  at 17.  The ALJ set forth his findings with respect to each step of the

five-step sequential evaluation process for determining whether an individual is disabled

pursuant to 20 C.F.R. § 404.1520(a).[2]  *Id*.  at 17-23.  The ALJ found that Plaintiff "has not

engaged in substantial gainful activity since January 2000, the alleged onset date."  AR at 18

---

[1]  At the time Plaintiff applied for disability benefits, he alleged an onset date of January 1, 2000.  The
claims representative who assisted him determined that the more appropriate onset date was December 31, 1995.
Plaintiff's Memorandum at 2, n. 1.

[2]  The additional issue before the ALJ was "whether the insured status requirements of sections 216(I) and
223 of the Social Security Act are met."  AR at 17.  The ALJ found that Plaintiff's "earnings record shows that [he]
has acquired sufficient quarters of coverage to remain insured through December 31, 2000."  *Id*.  The ALJ
determined that Plaintiff "met the insured status requirements of the Social Security Act through December 31,
2000."  *Id*.  at 18.

(citing 20 C.F.R. § 404.1520(c)).  The ALJ found that Plaintiff suffers from an impairment –

Parkinson's disease – but further found that Plaintiff "did not have an impairment or combination

of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526)  AR at 19.  The

ALJ determined that Plaintiff "had the residual functional capacity to perform at least light

exertion work activities from January 1, 2000 to December 31, 2000."  *Id*.  In so finding, the ALJ

"considered all symptoms and the extent to which these symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence . . . [he] also considered

opinion evidence . . . ."  *Id.*  The ALJ further determined that Plaintiff "was capable of

performing past relevant work as an actor . . . from January 1, 2000 to December 31, 2000.  This

work did not require the performance of work-related activities precluded by the claimant's

residual functional capacity."  *Id.* at 23.  Accordingly, he concluded that Plaintiff "was not under

a 'disability,' as defined in the Social Security Act, from January 1, 2000 to December 31, 2000."

*Id*.  (citation omitted).

  Thereafter, Plaintiff requested review of the ALJ's decision by the Social Security

Administration Office of Disability Adjudication and Review's Appeals Council ("Appeals

Council"), *id*.  at 9, and submitted letters as additional evidence to be considered by the Appeals

Council.  The Appeals Council received the additional evidence, but, on June 6, 2007, denied

Plaintiff's request for review.  *Id.*  at 6.  The Appeals Council determined that "[the reasons

Plaintiff disagreed with the ALJ's decision] [do] not provide a basis for changing the [ALJ's]

decision[,]" and "found no reason under [the Appeals Council's] rules to review the

Administrative Law Judge's decision."  *Id*.  at 6-7.  The ALJ's decision thus became the final

decision of the Commissioner, and Plaintiff then timely commenced this action for review of the

decision.

**CONTENTIONS OF THE PARTIES**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence in the

record, and is erroneous as a matter of law. Thus, Plaintiff requests that the Court reverse the

agency's decision, or, in the alternative, remand the case for a new hearing. Plaintiff's

Memorandum at 1. Plaintiff alleges that the ALJ's determination that he did not have a "severe"

impairment was erroneous. *Id.* at 4. Plaintiff asserts that the ALJ made five errors:

> (1) the ALJ improperly determined the Plaintiff's impairments to be non-severe by his (a)
> failure to evaluate two additional ailments at step two of the sequential evaluation process
> by not considering "whether the combination of the Plaintiff's impairments, namely, his
> Hepatitis C, psoriasis, depression, and Parkinson's disease, constituted a severe
> impairment[,]" and (b) "[failure] to follow the proper procedure for analyzing mental
> impairments[,]" *id.* at 4-5;

> (2) the ALJ failed to follow proper procedure for analyzing mental impairments by his (a)
> "[failure] to determine whether the Plaintiff had a 'medically determinable' mental
> impairment[,] (b) "[failure] to specify the symptoms, signs, and laboratory findings that
> substantiated the presence of the impairment, and document those findings[,]" and ©
> "[failure] to follow the regulatory requirements for the evaluation of mental
> impairments[,]" *id.* at 7-8;

> (3) the ALJ failed to properly develop the administrative record by not "recontact[ing] the
> Plaintiff's health care provider to obtain evidence" of Plaintiff's "symptoms of depression
> in 2000" because there "was not an adequate description of these symptoms[,]" *Id.* at 8-
> 9;

> (4) the ALJ erroneously determined that the Plaintiff was capable of performing his past-
> relevant work as an actor, but "failed to perform the proper analysis for determining that
> the Plaintiff was capable of performing his past-relevant work[,]" by not making "any
> findings of fact as to the physical and mental demands of the Plaintiff's past occupation
> as an actor, other than to find that it was light work[.]" *id.* at 11; and

> (5) the ALJ erroneously assessed the Plaintiff's residual functional capacity by not
> "properly assess[ing] the Plaintiff's limitations as required pursuant to Social Security

Ruling 96-8p[,]" and failing "to perform a function-by-function assessment of a claimant's ability to perform the physical and mental demands [the exertional and non-exertional requirements] of work." *Id*. at 12, 14.

Defendant, in support of her motion and in opposition to Plaintiff's motion, maintains that the agency's decision is "supported by substantial evidence" in the record. Defendant's Memorandum in Support of [Her] Motion for Judgment of Affirmance and [Her] Memorandum in Opposition to Plaintiff's Motion for Judgment of Reversal ("Defendant's Memorandum") (Document No. 15) at 5. Defendant asserts two reasons warranting affirmance of the decision: (1) Plaintiff's impairments were not disabling, and (2) Plaintiff was able to perform past relevant work. Defendant's Memorandum at 6, 9-10. In support of these contentions, Defendant argues that "Plaintiff was not diagnosed with Parkinson's until sometime in 2002 or 2003, and no physician noted that [Plaintiff] had symptoms of Parkinson's prior to 2001[ ]"; in addition, Defendant argues that the "physician evidence in the record does not establish disabling symptoms by [December 31, 2000] (or really any date)." *Id*. at 6. Defendant further contends that "there is no evidence that [Plaintiff's] Hepatitis C and psoriasis was disabling or otherwise not under excellent control[,]" and "it was noted that [Plaintiff] had a history of Hepatitis C antibody, but he had no symptoms of liver disease [and] [n]o physician has noted that [Plaintiff] was limited in any way from these impairments." *Id*. at 7-8. With respect to Plaintiff's claim regarding depression, Defendant argues that the record indicates that his depression "seemed to stem more from being out of work than any permanent condition[,]" and that "nothing in any of these conditions would indicate that [Plaintiff] had any significant limitations by December 31, 2000, whether considering the conditions individually or in combination." *Id*. at 8. Defendant noted that "despite . . . third party [witnesses'] accounts were consistent with some limitation by

December 31, 2000 [Plaintiff] could not do the carpentry work he used to do, . . . they were inconsistent with an RFC for light work activity."  Defendant's Memorandum  at 9.  Defendant further argues that "there is ample evidence that [Plaintiff's] condition did not become severe until well after [Plaintiff's] date last insured, as every physician so indicated."  *Id*.  at 10.  Defendant contends that the "ALJ gave [Plaintiff] the full benefit of the doubt by accepting the third party non-medical testimony that was not inconsistent with other testimony."  *Id*.

        Responding to Plaintiff's contention that the ALJ did properly consider the requirements of his past relevant work activity as an actor in accordance with the applicable regulations, Defendant maintains that the ALJ properly relied on the testimony of the vocational expert who "testified that work as an actor is light work activity, and identified a corresponding Dictionary of Occupational Titles listing number (150.047-010) . . . and noted that this was [Plaintiff's] only occupation during the past 15 years."  *Id*.  Defendant concludes that the ALJ properly considered this evidence "to determine whether [Plaintiff] could perform this occupation as it is generally performed in the national economy."  *Id*. at 10.

        Plaintiff did not file an opposition to Defendant's Motion for Judgment of Affirmance; nor did he file a reply to Defendant's opposition.  In this circumstance, the Court has discretion to treat Plaintiff's motion as conceded.  *See* LCvR 7(b).  However, the Court will not do so, and instead, will evaluate Plaintiff's motion, and Defendant's motion, in accordance with the governing authorities.

## STATUTORY FRAMEWORK

        The Social Security Act established a framework to provide "disability insurance benefits" to eligible individuals and "to provide supplemental security income to individuals who

have attained age 65 or are blind or disabled." 42 U.S.C. §§ 423, 1381, 1381a. The statute

defines disability for non-blind individuals as "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months[.]" § 423(d)(1)(A); 20 C.F.R. § 416.905. A disabled individual is

eligible for supplemental security income if he or she meets additional statutory requirements

concerning "income" and "resources." 42 U.S.C. § 1382(a). The Social Security Administration

has promulgated regulations, pursuant to the statue, outlining a five-step process for evaluating

disability of adults. *See* 20 C.F.R. §§ 404.1520, 416.920.

First, the agency evaluates whether the claimant is "doing substantial gainful activity;" if

yes, the agency concludes that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), (b);

416.920(a)(4)(I), (b). If not, the agency determines whether the claimant has "a severe medically

determinable physical or mental impairment that meets the duration requirement . . . or a

combination of impairments that is severe and meets the duration requirement . . . ." §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii). The impairment or combination of impairments is severe if

it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."

§§ 404.1520(c); 416.920(c). If deemed severe, the agency then determines whether the

impairment "meets or equals one of [the] listings"; if so, and it meets the duration requirement,

the agency concludes that the claimant is disabled. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii),

(d). "[T]he listings" refers to a "listing of impairments" which "describes for each of the major

body systems impairments that [the agency] consider to be severe enough to prevent an

individual from doing any gainful activity, regardless of his or her age, education, or work

experience."  § 404.1525(a).

Next, the agency assesses the claimant's "residual functional capacity and . . . past

relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).  Residual

functional capacity is "the most [an individual] can still do despite" "physical and mental

limitations," from all medically determinable impairments, "that affect what [he or she] can do in

a work setting."  § 404.1545.  If the claimant has the residual functional capacity to perform his

or her "past relevant work," the claimant is deemed not disabled.  § 404.1560(b)(3).  Otherwise,

the agency assesses the claimant's "residual functional capacity and . . . age, education, and work

experience to see if [he or she] can make an adjustment to other work."  §§ 404.1520(a)(4)(v),

(g); 416.920(a)(4)(v), (g).  If the claimant can adjust to other work that "exist[s] in significant

numbers in the national economy," the agency determines that the individual is not disabled.  §

404.1560(c).  However, if the claimant cannot make such an adjustment, the agency finds that the

individual is disabled.  §§ 404.1520(g)(1), 416.920(g)(1).


**APPLICABLE STANDARD**

Claimants may seek judicial review in a United States District Court of "any final

decision of the Commissioner of Social Security made after a hearing to which he was a party

. . . ."  42 U.S.C. § 405(g).  "The Commissioner's ultimate determination will not be disturbed if

it is based on substantial evidence in the record and correctly applies the relevant legal

standards."  *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted).  "A court

reviewing a case for substantial evidence gives considerable deference to the decision rendered

by the ALJ and ensures his decision is in accordance with applicable law." *Beynum v. Barnhart,*

435 F. Supp. 2d 142, 144 (D.D.C. 2006) (citations omitted); *see also* 42 U.S.C. § 405(g).

"In other words '[a] district court's review of the [Social Security Administration's] findings of fact is limited to whether those findings are supported by substantial evidence.'" *Little v. Colvin*, No. 12-568, 2013 WL 6152065, at *3 (D.D.C. Nov. 22, 2013) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Id.* (citation omitted) (internal quotation marks omitted).

The United States Court of Appeals for the District of Columbia Circuit has observed that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). Thus, "a reviewing judge must uphold the ALJ's legal 'determination if it . . . is not tainted by an error of law[.]'" *Isaraphanich v. Comm'r of Soc. Sec. Admin.*, No. 12-0700, 2013 WL 3168141, at *3 (D.D.C. June 21, 2013) (citations omitted); *see also Nicholson v. Soc. Sec. Admin.*, 895 F. Supp. 2d 101, 103 (D.D.C. 2012) (citation omitted) (internal quotation marks and alteration omitted) (noting that the inquiry upon judicial review "examines whether the ALJ has analyzed all evidence and has sufficiently explained the weight he had given to obviously probative exhibits"); *Little*, 2013 WL 6152065, at *3 (citations omitted) (noting that the court "is not to review the case 'de novo' or reweigh the evidence"). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation omitted); *see also Garnes v. Colvin*, No. 12-1090, 2013 WL 5297221, at *4 (D.D.C. Aug. 27, 2013).

**DISCUSSION**

For the reasons that follow, the undersigned finds that the ALJ's findings are supported

by substantial evidence, and were made in accordance with applicable law.

**I.        *The ALJ's Findings That Plaintiff's Impairments Were Not Disabling Are Supported***
**         *by Substantial Evidence and Were Made in Accordance With Applicable Law***

**A.        *Testimony of Dr. David Williams, Medical Expert***

Plaintiff has the burden to establish that he was disabled before December 31, 2000 in

order to be entitled to a period of disability insurance benefits.  During the hearing, the ALJ

heard  testimony from Dr. David Williams, who reviewed Plaintiff's medical records and

concluded that there were no documented symptoms from 1997 through December 2000.  AR at

318-320.

Dr. Williams also testified that "Parkinsonism does not normally cause abnormalities of

liver function [and] it is my opinion and impression that [the results of the liver function test]

[have] no bearing . . . with the potential diagnosis of Parkinsonism."  *Id*. at 322.

With respect to his psoriasis, and Hepatitis C, Plaintiff alleges that he "objectively

demonstrated" these impairments could produce the symptoms of fatigue and weakness of which

the Plaintiff complained, and that the ALJ "failed to consider whether the combination of the

Plaintiff's impairments [including depression] constituted a severe impairment."  Plaintiff's

Memorandum at 4.  However, the record evidence demonstrates that the ALJ considered the full

extent of Plaintiff's ailments, because he inquired of the claimant regarding his medical history

starting in 1997 and continuing until 2003.  AR at 310-315.  The ALJ also requested input from

Dr. Williams, who opined that "while a diagnosis [of Parkinson's Syndrome] had not been made

[in July 2003], [Plaintiff's] symptoms apparently were starting somewhere around 2001, plus or minus a few months." *Id*. at 316. Dr. Williams also testified that "[f]rom the information that is obtainable from the records, [Plaintiff] has a known diagnosis of psoriasis, . . . [and] Hepatitis C." *Id*. at 319. Upon examination by Plaintiff's counsel, Dr. Williams opined that "Parkinsonism does not normally cause abnormalities of liver function and specifically not with inflammatory changes that are visualized in these tests." *Id*. at 322. Dr. Williams was not persuaded by the results of Plaintiff's laboratory results that [the "very mild abnormality associated with 'an inflammatory process relatively mild in this patient at that time[ ]'" has [any] bearing, whatsoever, with the potential diagnosis of Parkinsonism." *Id*. Dr. Williams further opined that with respect to the symptoms of fatigue and weakness Plaintiff experienced as noted by the report of Dr. George Benloulou, a treating physician, the report does not "give [him] enough information other than the fact that the physician felt that there were problems with fatigue for sleep, back pain and myalgia" and that these symptoms "could cover the beginning of a series of many different ailments and problems." *Id*. at 325.[3] As to Dr. Benloulou's report, the ALJ found it not credible and thus gave "little weight because it contradicts his own medical reports and is inconsistent with the record as a whole." *Id*. at 20. In support of his conclusion, the ALJ noted that the lawyer who represented Plaintiff at the hearing sent the Medical Source Statement to Dr. Benloulou with a cover letter which "points out in bold and underlined dates [that are important] to his client . . . that [he] had Parkinsonism prior to 2000[,]" and that the "focus on Parkinsonism prior to 2000 was initiated by [the lawyer] only after the State disability

_____

[3] Dr. Benloulou completed the "Medical Source Statement" form at the request of the attorney who represented Plaintiff at the hearing. AR at 20.

determination agency pointed out in its denial that [Plaintiff's] benefits expired on December 31,

2000, and that he would need to provide disability prior to that date." AR at 20.

As to Plaintiff's other ailments, Hepatitis C, psoriasis, and depression, Plaintiff's medical

records indicated that Plaintiff had a history of these ailments; however, no physician noted that

he was limited in any way prior to December 31, 2000. *Id.* at 136, 157, 170.

### B.    ALJ's Review of Plaintiff's Medical Records from 1997 to 2006

Plaintiff alleges that the ALJ "failed to recontact the Plaintiff's health care provider to

obtain evidence" because the ALJ "specifically found that the Plaintiff demonstrated symptoms

of depression in 2000, but there was not an adequate description of these symptoms." Plaintiff's

Memorandum at 8.

The claimant bears the burden of proving that he or she is disabled, and "must furnish

medical and other evidence that [the agency] can use to reach conclusions about [the claimant's]

medical impairment(s) and . . . its effect on [his or her] ability to work on a sustained basis." 20

C.F.R. § 404.1512(a); *see also Jones v. Astrue*, 647 F.3d 350, 352 (D.C. Cir. 2011) (citing *Butler

v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004)) ("In the first four steps, the claimant bears the

burden of proof."). However, the agency is obliged to "make every reasonable effort to help" the

claimant obtain medical records from his or her medical sources, and generally develops the

claimant's medical history for at least a 12-month period. 20 C.F.R. § 404.1512(d). Moreover,

the ALJ "has the affirmative duty to investigate fully all matters at issue and to develop the

comprehensive record requisite for a fair determination of disability." *Tripp v. Astrue*, 864 F.

Supp. 2d 120, 125 (D.D.C. 2012) (citations omitted) (quoting *Poulin v. Bowen*, 817 F.2d 865,

870 (D.C. Cir. 1987)) (internal quotation marks omitted). While an "ALJ cannot rely only on the

evidence submitted by the claimant when that evidence is inadequate," "the ALJ need not

undertake an additional investigation where there is no obvious gap or defect in the

administrative record." *Turner v. Astrue*, 710 F. Supp. 2d 95, 108 (D.D.C. 2010) (citations

omitted) (internal quotation marks and alterations omitted).

The Court finds that Plaintiff's contention that the ALJ erred by "fail[ing] to recontact

Plaintiff's health care provider to obtain evidence" is without merit.  The administrative record

includes Plaintiff's medical records for the period of 1997 through May 15, 2006; his hospital

and medical records received after the hearing concerning his hospitalization during the period of

June 24, 2003 through October 3, 2003, and July 5, 2006, and the June 20, 2003 hospital report,

all which were reviewed by the ALJ.  AR at 4, 16.  The ALJ, after reviewing the additional

medical records, "decided the information contained within did not warrant a supplemental

hearing as no additional information . . . would impact the outcome of this case was revealed."

AR at 16.

"[P]ursuant to Social Security regulations, recontact with a treating physician is necessary

only when the evidence is inadequate to determine whether the claimant is disabled and the

physician's report contains some conflict or ambiguity that must be resolved or is missing

necessary information." *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *7 (D.D.C. July

11, 2012).  In the instant case, it was not necessary for the ALJ to recontact the treating physician

because there was no conflict or ambiguity in the record.  Plaintiff was allowed to submit the

additional medical records.  Upon review of the medical records, an MRI conducted in 2002,

showed some "cerebral atrophy but no other abnormality" and the symptoms of his other

ailments were not significant to warrant a supplemental hearing.  AR at 258-278.

### C.      Contradictory Evidence from Plaintiff's Friends

Nancy France testified for the Plaintiff at the hearing before the ALJ.[4]  The ALJ

determined that her testimony "corroborate[d] the record, that until 2001 [Plaintiff] did not have

symptoms that even he felt required medical attention."  AR at 22.  He also determined that her

letter and the letter of another friend contradicted the Plaintiff's "allegations of disability due to

Parkinsonism back in 2000," and that she was not able to pinpoint with any specificity the exact

date of when his disability began.  *Id*. at 340-347.  The ALJ based his conclusion with respect to

Plaintiff's "residual functional capacity to perform at least light exertion work" on the

requirements outlined in 20 C.F.R. § 404.1529, SSRs 96-4p and 96-7p, as well as opinion

evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p,

96-6p and 06-3.  *Id*.  at 19.  Plaintiff testified that he was disabled during the time period at issue;

however, evidence from Plaintiff's friends indicate that he was "skiiing and playing tennis."  *Id*.

at 19-23.  The record is devoid of any evidence noted in a medical record prior to December 31,

2000 that Plaintiff exhibited physical limitations from any work.  Accordingly, the undersigned

will not disturb the ALJ's determination that Plaintiff did not have "specific limitations in a work

setting" because his determination is supported by substantial evidence in the record.  *Id*.  at 21.

### II.      *The ALJ's Finding That Plaintiff Was Able to Perform Past Relevant Work Activity As an Actor Was Supported by Substantial Evidence and Was Made in Accordance With Applicable Law*

The ALJ heard testimony from Eileen Lincicome, Vocational Expert, who testified at the

hearing and "classified [Plaintiff's] past relevant work as an actor (DOT 150.047-010; light; SVP

---

[4] Dana Gladstone and Ms. France submitted letters on behalf of Plaintiff, but only Ms. France testified at the hearing.  AR at 123-124.

7; skilled)." AR at 23; 347.  The ALJ determined that "Ms. Lincicome's testimony was consistent with the information contained in the *Dictionary of Occupational Titles* (DOT)[,]" and that "Plaintiff testified that he worked as an actor and director which is consistent with the past work discussed by the vocational expert." *Id.* at 23.  The ALJ determined that the Plaintiff did not have any "symptoms that curtailed his residual functional capacity during 2000 such that it would prevent him from performing work activities." *Id.* at 22.  He also determined that "[i]n comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, the undersigned finds that, through his date last insured of December 31, 2000, [Plaintiff] was not able to perform it as actually and generally performed." *Id.* at 23.

The record demonstrates that no physician noted any significant physical limitations Plaintiff exhibited prior to January 2001 due to one or a combination of impairments that would preclude him from at least light work activity.  *Id*. at 128-278.  It is undisputed from the record that Plaintiff suffered from several impairments, however, his treating physicians did not indicate in their treatment notes any disabling symptoms due to Parkinson's or his other ailments or the degree, if any, to these limitations.  *Id*. at 136, 156-157, 170.  Plaintiff's past relevant work was as an actor which is light work as the vocational expert testified.  Accordingly, the undersigned will not disturb the ALJ's determinations that Plaintiff was able to perform his past relevant work because it is supported by substantial evidence in the record and in accordance with applicable law.  *Id*. at 21.

**CONCLUSION**

For all of the foregoing reasons, the Court finds that each portion of the ALJ's decision is supported by substantial evidence in the record, and in accordance with the applicable law.  The

undersigned further finds that Plaintiff has failed carry his "burden of demonstrating that the

Commissioner's decision is not based on substantial evidence or that incorrect legal standards

were applied." *Nicholson v. Astrue*, No. 10-2010, 2012 WL 4511271, at * 7 (D.D.C. Mar. 14,

2012).  Accordingly, Plaintiff's Motion for Judgment of Reversal (Document No. 9) is **DENIED**,

and Defendant's Motion for Judgment of Affirmance (Document No. 15) is **GRANTED**.


                                                    _____/s/_____
Date:  <u>March 31, 2014</u>                            DEBORAH A. ROBINSON
                                                    United States Magistrate Judge